Good afternoon. May it please the Court. My name is David Sergi. I'm from San Marcos, Texas. I have the pleasure of representing Ms. Lillian Smith, who is a real estate agent who sells ranches, islands, all sorts of things, from a little town in West Off, Texas, where she had a building. That building was struck by lightning and an insurance claim came about. The major issue in this case, Your Honor, has to do with whether or not summary judgment was appropriate and whether or not the two-year delay in bringing up the issue of statute of limitations operated as a waiver. Now I understand that there needs to be some room in the joints, as many people have written in for other cases. However, in this particular case, Your Honor, without going over the facts, which I think have been extensively briefed, there was e-mail correspondence and correspondence between Plaintiff's Counsel and between Defense Counsel after a, and I will admit, a legitimate denial letter was sent. After that denial letter was sent, Ms. Smith presented evidence from her engineer after finally getting a copy of the report so that she could try to explain the problem. And if it had ended there, we wouldn't be here. However, there's extensive e-mail correspondence going back and forth, which ends up with three different engineers giving reports and an e-mail that essentially indicates that the insurance company was reconsidering. Counsel says in her e-mail to me, a more formal letter will be forthcoming. Of course, that letter never does. Also, it seems to me one of the practical problems, I'm not saying you're wrong as a matter of law, but one of the practical problems of what you're saying is any statement by the insurance company, based on what you've given us, based on our evaluation from our own inspection, here's our answer, we're open to other information if you have it. Any time they basically state that we're going to try to uphold our obligations as the insurer, that they are not allowing any statute of limitations to begin, and that seems to me that it's, I don't know what all to label that, but that's a real conundrum for the insurance company, which you don't usually feel too sorry for, but nonetheless in a contractual relationship with your client. What should they say? We've now reviewed everything you've given us. None of it's sufficient. Don't send us anything else? No, Your Honor, but what they do is once they get our report, it's words plus. It's their actions. Why would the insurance company, if they weren't reconsidering this claim, spend the money to hire not one but two engineers? Maybe they were doing it for customer elections, or maybe they didn't want to have a bad faith finding if they lost on limitations. I mean, you don't have to, you can, just like a plaintiff can assert inconsistent claims, a defendant can say, look, I don't think you're covered or whatever, but I'm going to continue to work with you without waiving the coverage argument. And, Your Honor, I think that fits squarely in the Texas Supreme Court case of Provident Life and Axon Company v. Knott, where the court essentially holds that although the general rule determining the accrual date of a cause of action is a question of law, the accrual date of a cause of action involving insurance coverage based on the violation of the Texas Insurance Code, bad faith breach of an insurance contract or violation of the DTBA may present questions of fact. And that's what you've just argued for me. There are questions of fact. Counsel cannot get up on the stand and there is no evidence that they did. There is no insurance adjuster saying, yes, I did this for customer relations purposes. We have a question of fact, and that falls squarely within the Provident case. It seems to me the fact here, I mean, maybe so, but another way to look at this is that the fact here is they gave a clear denial but said we're open for anything else that you have. Are you saying that there's a fact question there or isn't that a legal, couldn't that be analyzed as a legal question, that if that's what the insurance company says, does the mere expression of being open to further information keep the statute of limitation period from beginning? And I think that is a legal question. What's your answer? The Texas Supreme Court has answered that question. Well, I don't think that's the same question. Sure, fact questions could enter into this, but here there's no fact question. You've got a written statement. Does that written statement create a fact issue? Your Honor, what you have are the actions of the insurance company after that denial letter. So what you need is a case, your position is that accrual began with the denial. You don't dispute that was a denial. No, I don't. But the subsequent conduct rescinded the denial. Yes, Your Honor. So then I have two questions. One is when did the denial occur in your mind? In my mind, it occurred at the earliest after we got the last letter, which was, I believe, in April of 2006. That says you're going to get a formal letter. We get an e-mail that says that, and we never actually get the e-mail. Under your theory, that wouldn't be a denial. When did your clock ever start under your theory? Your Honor, I might argue that it never has started because we never got that letter. However, I think it's clearly – My legal question, then, is if you're saying there is a material issue of fact, there wouldn't be a material issue of fact if under Texas law, in order to rescind a denial, the insurance company has got to say, I rescind, rather than we maintain our position, or the insurance company has got to start paying, because that would be inconsistent with the denial. But clearly they never say, we have changed our position, and they never paid. And I don't see a Texas case that stands for the proposition that you say would make your facts relevant. Your Honor, I believe that that's why it is a fact question. Because no one from the insurance company ever presented an affidavit on summary judgment, nor was a deposition ever taken, where they said exactly what you're saying. And when you look at the Provident Life case, the touchstone is clearly the first letter. But then you look at the other actions, and that's when you look at whether or not there is a fact. How do you distinguish the Pace case that they rely on? Because, Your Honor, I believe that the Pace case, first of all, I believe it's in this case, Your Honor, I don't think you had that bad faith element. And second of all, Your Honor, I believe in Pace, the court did not, first of all, I don't believe it was a district court case when I'm mistaken. But I do believe, Your Honor, that you have a conflict in Texas law. You have a conflict in Texas law. There is a conflict, Your Honor, between the Fifth Circuit's, the Pace case, Your Honor, as well as the Provident case. And I think you go back to the Texas Supreme Court case in Provident, which says there's a fact issue. If there's a fact issue, it's a fact issue, and you can't grant summary judgment. And that's not procedural. The fact issue would be that a reasonable person would interpret the October 13 and April 9 communications as rescinding? Is that the fact issue? Do we ask what a reasonable person would interpret those communications to be? Yes, Your Honor, and I believe that's where a reasonable person, it's not a legal question, that becomes the fact question. And I believe, again, the fact question is what the problem with this entire insurance company's position is. Because as the insurance company itself has actually summarized this case in their surreply, they said the question is, do the, quote, actions arise to the level of, quote, stringing along the appellant? And here, Your Honor, you have your delay. If she had undenied it, if she's not getting money, how could she think she, if they're not paying her, how would she think that they've changed their position? Well, Your Honor, because they had engineers look at it. They considered our engineers' report. Right. If they hadn't done that. And I thought in the end, the letter that comes at the end in April says, yep, the third engineer agreed with our first. We aren't changing our position, we never have, and we aren't. We wanted to possibly avoid litigation, come to a settlement, so we were willing to look again. But we have never paid you a penny. We have consistently said since November you will not get a penny. Well, they actually paid a $5,000 boiler policy. Oh, well, that was on the other policy, though, right? Your Honor, but the real issue here, Your Honor, is that we have to step into the minds of the parties at the time. And so that's where the fact question comes in. And that's where, under either standard of review, you can't substitute, the court can't substitute its own judgment for that of the parties. And, again, the — Is it relevant that her own, I forget who it was, said, hey, we're worlds apart, we're still worlds apart? They interpreted the letters to suggest the insurance company as being as unmoved as before. It's quite true. However, the point of it is, Your Honor, when they hired the second and the third engineer, you would assume there's a purpose for it. And, again, there's no evidence in the record of what the purpose of it is. There is no e-mail from counsel. There is no affidavit from an insurance adjuster saying we did this simply to be for customer relations or, as you pointed out, Judge Owens, to avoid a bad faith claim down the road. We simply — there is simply no evidence in the record for the court to have made that factual determination. I don't understand. I don't see a Texas case here. The insurance company denied formal denials. That's when the two-year limitations period started. She comes up with her engineers and says, you know, please take another look at it. They said, okay, we will. I don't see a Texas case that says you agree to take a second look, rescinds the denial, or pauses limitations. Yes. And they certainly had the right to reconsider if they chose to do so. They did reconsider, and they ultimately denied. I don't see any Texas case that says that the original denial was suspended, and if they take another look to protect themselves from litigation that they thought was probably coming, that they can't hire experts to take another look. Well, Your Honor, it goes back to actually your decision in HECI expiration. I remember it well. Which is obviously an oil and gas case. It's not. But, again, as you laid out, there are two unifying principles that apply in the discovery rule case, and this is here. Where did we discover we had a problem? The nature of the injury must be inherently undiscoverable, so if you are I know what that means. You understand the case. And so what I'm saying is here, we didn't know until they refused to pay. After having, number one, engaged in two years of litigation, number two, and having a total of, I believe, three experts look at the facts in the case and look at whether or not lightening actually caused this or not. And so at that point, you have to assume some reasonable good faith basis for the insurance company to have done what they were doing, and I think the most rational explanation would be, and I think this is why it's a fact question, that they were looking at the claim and seeing if they were right or wrong. And I think that pauses it, and I think that falls squarely under your own logic in the HECI case. Because at the end of the day, you don't assume that the insurance company is doing something for an unreasonable purpose. And in this case, they waited two years. So I think the insurance company's own behavior gives you a circumstantial case that says, we didn't see this as a limitations problem because we, in fact, were looking at other expert opinions, and then we decided, no, we never formally said that, but we did say there's a formal letter coming, which obviously implies that the insurance company is going to give a new decision. Counsel, let me ask you something about your other claims. This is basically a breach of contract claim. It really ties into the amendment, second amendment complaint issue. But I want to ask you just a factual question. What are your claims under the Texas Deceptive Trade Practices Act and the insurance code? Are they all based on this same set of facts, or is there something different there in your claims under those two statutes? It all comes back to the same nucleus of facts that are alleged in the facts of the second amended complaint, Your Honor. And it has to do with what they were, obviously what they were covering. There was a factual dispute, as was shown, I think, in the Cerro plan, I think it's also on the record, that did Lightning cause this or not? And there was a — They all come back into the refusal of the insurance company to cover this particular claim and maybe the dragging out of their denial or whatever to make of that. I mean, there's no separate set of factual questions related to the Trade Practices Act or the insurance code beyond what you've been talking about here. That's a question. Is there? Yes, Your Honor. I mean, there are some representations that were made by the original broker to Ms. Smith that would come to play in trial. I should look at your complaint, but I want to know if there's anything further there. There's nothing that's set forth in the complaint other than these operative facts, Your Honor. All right, counsel. Thank you. I believe my time is up. If you cover up the red light, you have unlimited time, I guess. It's a new trick. I've got to remember that. We may remind you otherwise. Your Honors. Seth Spiegel on behalf of the Appellee Traveler's Casualty Insurance Company of America. The Court is well aware this is a dispute over an insurance policy issued to the appellant. The ultimate question before this Court is whether the appellant's claims against travelers are time barred. And we respectfully submit that they are, and we're asking the Court to affirm the district court's judgment granting the dismissal of the claims with prejudice. Listening to the appellant's argument and the Court's questions, I think everyone is very focused on the facts. I look at this as a situation where there's two lines of cases. You have Pace on one side. You've got Pace and its progeny, excuse me, Pace, Dijon, Shepard. And then you have the Pena case. And the big distinction here is we have an understanding. Counsel said there's a legitimate denial letter sent in November of 2013. Once you do that, you are now into the Pace and its progeny set of cases. There's got to be a change in coverage position or a payment. And that's what happened in Pena. One or the other. Correct. And that is what happened in Pena, the case in which the appellant is relying on. There was a change in a coverage position upon the request to revisit it. There was a subsequent payment based on that reevaluation. And that's the big distinction in the facts that are before this Court and why my client falls within Pace, Shepard, Dijon. What happened here is we had an outright denial, which has been conceded and stipulated to on November 13 of 2013. Eight months later, we get a request to reevaluate. What do Pace, Shepard, Dijon all teach us? A simple request to reevaluate and the insurer's agreement to do same. It does not restart the clock. We have an outright denial on November of 2013. As Judge Southlick, you've noticed, the insurer being a trick bag, risking future bad faith that they just refuse to potentially ignore the need to reevaluate and potentially change position. And in those cases, they allow the insurer specifically to go ahead and do that. And it's incumbent upon the appellant to come forward and say, show me that change in position. Show me that payment. Not just, you know, there might be. You know, Shepard specifically says, when you read toward the end of the decision, a prior denial is not, quote, negated by the possibility that the insurer may revisit the claim or change its position. That's in Shepard. And that's what we have here. They've asked us to reevaluate. We wrote the letter. Counsel in the October letter says, nothing in this information that you've submitted to us changes, causes travelers to change its position. Nevertheless, we exercise a, paraphrasing, we're going to exercise our right to reevaluate just to be sure. We're going to bring out a new engineer, and we'll, you know, see what happens. Under Pace, Shepard, Dijon, that does not constitute a restarting of the statute of limitations clock. Therefore, you know, the only next communication of relevance that comes is the April 9th. Counsel also agreed. They got that letter, and that's what he said. Well, that should have started my clock if the earliest, is I think what he said. Okay. That clearly shows, again, there's no change in position. And so because we've yet to have any change in position, no prior payments, as prospectively suggested as court, were well within the page. But the April 9th did say you will get a formal response. She said there is a quote to that effect, yes. No response ever came? No. And again, that doesn't implicate anything. It means — Well, it implicates the predicament of a person dealing with an insurance company. Right? If a reasonable person would think, okay, I've asked them to reconsider, and they said, okay, I'll hire a new engineer, we're going to look at the cause again, and then the next thing they get is you'll get a formal response, I'm not sure the reasonable person would think, I've got to sue them, because if I wait too long in spite of all these encouraging signs they're giving me, they're going to turn around and say, now you're too late. I understand that, but let's look at the facts of this case. It wasn't just Nemo that said a more formal response. It's the engineering report confirming the prior conclusions that there is no covered cause of loss, and counsel just said that's when they knew, the earliest that he could tell. I thought the e-mail in April that said you'll get a formal response also attached the third engineer's report. Correct. It did. And that's the — that's our engineer's report confirming the same position that we have had all along. Well, just quickly, factually, it's not often we get cert replies, but it was allowed and you submitted it. Thank you. In your footnote, in footnote 38, you say the third engineer's conclusions were similar to the first engineer's. Correct. Are either of those reports in the record? I believe the first engineer's report is. The third engineer's report, of which you're, I think, focused on, is not in the record because I believe it may have been oversight. You have the e-mail where it's supposed to be attached, and you have a little picture of a PDF. But that third engineer's report is not in the record. But as the district court aptly noted — But you're saying the first one even is? Because I looked pretty hard, and I found her engineer's report, which is pretty explicit about how the lightning worked and cracked the foundation and all that, so I was eager to see why the insurance company's position wouldn't change, as you stated. But I couldn't find either report. I'd have to go. I thought it was in there. You think it's there. Okay. I definitely would have misrepresented it. But so legally, I guess what you're saying is there's a bright-line rule. Once you deny, Texas law says accrual starts. And unless either the insurance company says, we are rescinding our denial, or they pay regardless of what they say, the accrual is not interrupted. Correct. So that would allow — it would allow a lot of communications that could lull somebody. And it strikes me as odd that you can have a lot of communications to an insured saying, okay, we're going to look at it. We're eager to get yours. We're eager to compare. But then at a magic moment, they can say, we didn't get that formal response to you, but now it's too late. But Texas law, it's published. It's well there. That's what it is. There were nine months between the April letter and the November 13th — excuse me, six months between the April — there's a lack of communication. There's nothing going on at this point. The record shows no, like, I'm sorry, we're a little late. We'll get you that letter. Or, hey, where's my letter? Or, have there been a decision made? The lulling you're — there's no record of that in this case. Okay. There's nothing. And so — So the law doesn't allow for a reasonable person interpreting these exchanges to suspend or — No. They just have — under Texas law, you've got to sue no matter what the insurance company is saying. Unless there's been a change — Okay. — a change in coverage position or payment. But I think that's what Pace, Shepard, the entire progeny is made very clear. Okay. And, Your Honor, that really, I think, is the totality of our argument. But counsel was involved in that — by that point, right? Yes, Your Honor. Again, I believe, just real quickly, I don't believe my client has waived his defenses. I think we timely asserted them in the first answer that we filed when we arrived in federal court. The limitations provision in the policy was asserted in that first one. You're certainly on notice of a time bar defense at that point. A spelt and suspenders answer was filed with the consent of counsel. So whatever potential defect may have existed, I think, was cured when the consent was provided. You say spelt and suspenders. The first amended complaint or whatever one had, it only referred to the contractual limitations, did it not, which would not apply to the insurance code and the Texas Deceptive Trade Practices Act. Your Honor, I think that, you know, from my perspective, you're on notice of a time bar defense, whether you want to say contractual limitation, which is what's said. But the contract limitation wouldn't help you under the statute.  But fair notice of a time bar defense in general, I think, has been raised by the contractual limitations. But the statutory limitations was certainly included in the second amended answer to the extent you disagree. And I think more than sufficient time was on file. There were four months left to still do the discovery. Extensions to respond to our motion were provided due to certain illnesses of opposing counsel. I think the record belies any alleged prejudice of the timing of either one of those answers being filed. And so I think the — You're not relying on them saying, okay, you can clean it up. No, I am as well. I mean, to the extent I need it. I don't think I need it. I think my first amended answer puts people on fair notice of a time bar defense to all claims. If you would agree with that, then I say my second answer, which certainly is guided every which way, I think that also, which it consented to, cures any potential defects. Would you say that the addition of the statutory limitations, the broader reference to limitations, was the only thing in the second amendment or whatever that amendment is labeled that is more than just a cleanup? I — well, there were — you know, we — I believe I was looking at it. You know, we also specified, I think, the limits, just to the extent there's any confusion that we might not assert limits. I think there was a reservation on appraisal. There were a few — again, I think I'm using the term belts and suspenders. There were a — it's not the lone thing. I don't want to tell you it was the only thing. It was more than just typo correction. Correct. All right. Unless Your Honors have anything further, I think that's the substance of my argument today. Your Honors, just a couple of comments. And, again, Pace, Payne, Dujon, I would agree that a simple request does not extend statutory limitations. But where the insurance does so much more, including spending money on an expert to re-review what the first expert did, that that takes it out. Because a reasonable person would assume that they are reconsidering, if they're hiring another expert, if another expert has to go out to the building to interrupt their business for a day to take measurements, to see where the lightning struck, to see that — to look at that crack in that foundation. And I think that takes it sort of out of the realm of the formalistic legal requirement that Travelers is arguing and kind of puts it into an equitable realm where you have the fact question, where that is what should have been litigated. Counsel, I have sympathy for the conundrum that the party or clients could be put into. We need to interpret Texas law as the same as you do, and it's a matter of figuring out is there any room for your argument under the Texas law. It does seem to me the insurance company would have the opportunity to drag this out until the eve of the statute of limitations running, and then declare it. Judge Higginson had already referred to that sort of scenario. But it does seem to me that we need some case law that will allow us to say that this sort of interchange and exchange is, in fact, pausing at least a limitation period. And I don't know if you've given that to us. Well, if you take a look at PASCO, XRO, PASCO v. Knoploch, Your Honor, I believe it even talks about 8C. Federal courts do not take a formalistic approach to determine whether an affirmative defense was waived. Rather, the Court will look at the overall context of the litigation and to have found no waiver where no evidence of prejudice exists in sufficient time to respond to the defense remains before trial. And here, Your Honor, I think it's talking about dragging it out. So you're saying we should apply Federal law to accrual, not State law? Your Honor, I believe that if you apply State law, as I've already argued, Your Honor, that's a fact question. What's your best case if there's equitable estoppel to statute of limitations under Texas law? Your Honor, I would have to brief that. I have not briefed equitable estoppel. You just said it took in the equitable realm. I just thought maybe you had a case. Your Honor, I'd be pleased to submit a letter brief post-argument on equitable tolling. I would argue, Your Honor, that if you look at the Federal habeas realm. That's the question. Does Federal law control here or State law? Your Honor, I believe, Your Honor, my argument has been State law applies. But that has to do with the factual determinations of whether or not this is a question of fact. And I think we've shown that. But I think if you're looking at equitable, the best way to perhaps look at this is to look at both 11071 of the Texas Code of Criminal Procedure, which has a tolling provision, and the analogous Federal death penalty habeas law, Your Honor, which also has equitable tolling provisions, which, once again, look at the actions of the State. And I just argue that by analogy as opposed to arguing it, you know, on these facts. But when it comes to the civil side of this, Your Honor, I think equity is equity. Did you? I don't recall. That's what I didn't. I didn't remember the equitable realm being discussed in your briefs. It was not, Your Honor. Okay. But I'm bringing it to the Court's attention because, really, when you look at Provident Life, it's saying there's something — if there's something else out there, it's a fact question, and it's on a case-by-case basis. And with that, I have no other comments. All right, counsel.  Thank you, Your Honor. Thank you.